UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


RUBEN CUEVAS,

v.                                        Case No. 8:98-cr-154-T-24TGW
                                                   8:06-cv-1126-T-24TGW

UNITED STATES OF AMERICA.

_____

ORDER

This cause is before the Court on Defendant Ruben Cuevas' 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence.  Cuevas, who is represented by privately-retained counsel, is proceeding on his amended motion to vacate. (Doc. cv-23, cr-622).  The Government has filed a response (Doc. cv-26) and Cuevas has filed a reply. (Doc. cv-27).

A review of the record demonstrates that, for the following reasons, Cuevas' 28 U.S.C. § 2255 motion to vacate must be **DENIED**.

PROCEDURAL HISTORY

On September 24, 2002, a second superseding indictment was returned charging Cuevas and several others with various narcotics violations. (Doc. cr-198).  Mark J. O'Brien was originally appointed to represent Cuevas. (Doc. cr-303). In August 2003, Oscar S.

Rodriguez filed a notice of appearance after being retained by Cuevas. (Doc. cr-345). O'Brien withdrew.

On December 11, 2003, pursuant to a written plea agreement, Cuevas pled guilty to conspiracy to import five kilograms or more of cocaine into the United States in violation of 21 U.S.C. § § § 952(a); 960(b)(1)(B)(ii) and 963 (Count One); and conspiracy to possess with intent to distribute five kilograms or more cocaine in violation of 21 U.S.C.§ § 841(a)(1), 841(b)(1)(A)(ii)(II) and 846 (Count Two). (Doc. cr-380 [Plea Agreement]; cr-389 [Change of Plea hearing]; cr-557 [Transcript of Change of Plea Hearing]).

The written plea agreement included an appeal waiver that read:

> The defendant understands and acknowledges that defendant's sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984 and the federal sentencing guidelines.  Defendant is also aware that a sentence imposed under the sentencing guidelines does not provide for parole.  Knowing these facts, the defendant agrees that this court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines and expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground except for an upward departure by the sentencing judge or a sentence above the statutory maximum or a sentence in violation of the law apart from the sentencing guidelines;  provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(Doc. cr-380 at 11, ¶ 5)

This Court accepted Cuevas' guilty plea on December 29, 2003. (Doc. cr-402). On April 13, 2004, Cuevas retained Scott Kalisch to replace Oscar Rodriguez as his counsel. (Doc. cr-458). Kalisch represented Cuevas at sentencing.

On April 21, 2004, this Court sentenced Cuevas to a total term of 252 months incarceration as to Counts One and Two of the second superseding indictment, with the

sentences to run concurrent to each other. (Doc. cr-472). Judgement was entered April 22, 2004. (Doc. cr-472).

On April 29, 2004, Cuevas filed a Notice of Appeal arguing that the district court violated his Constitutional rights in light of Blakely v. Washington, 542 U.S. 296 (2004), by enhancing his offense level pursuant to USSG §3B1.1 based on his role as an organizer in the conspiracy. (See Attachment A to Doc. cv-26 [Appellant's Initial Brief at 17-25]). The Government moved to dismiss Cuevas' appeal based on the waiver provision in his written plea agreement. (See Attachment B to Doc. cv-26).

Cuevas responded to the Government's motion to dismiss his appeal, citing United States v. Booker, 543 U.S. 220 (2005) and arguing that Cuevas did not fully understand the significance of his appeal waiver. (See Attachment C to Doc. cv-26).  On June 14, 2005, the United States Court of Appeals for the Eleventh Circuit granted the Government's motion to dismiss the appeal based on a  valid appeal waiver, noting: "The record reveals that the magistrate adequately and specifically questioned Appellant during the plea colloquy about the appeal waiver and that Appellant confirmed that he understood the waiver." (Doc. cr-590).

Cuevas timely filed a motion to vacate on June 16, 2006. (Doc. cv-1).  After the Court ordered Cuevas to file an amended motion to vacate, Maria Elena Perez made an appearance on behalf of Cuevas.  Cuevas is proceeding on his amended motion to vacate filed August 11, 2006. (Doc. cv-23, cr-622).  In that amended motion, Cuevas raises three grounds of ineffective assistance of counsel.

STANDARD OF REVIEW FOR INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment right to counsel is the right to effective assistance of counsel.

3

McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Strickland v. Washington, 466 U.S. 668, 688 (1984); see also Boykins v. Wainwright, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. United States v. Cronic, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. See Strickland, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second-guessing counsel's performance." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Id. (quoting Strickland, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. See Chandler, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different.

4

United States v. Greer, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Rolling v. Crosby, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. Strickland, 466 U.S. at 697; Tafero v. Wainwright, 796 F.2d 1314, 1319 (11th Cir. 1986).

DISCUSSION

Grounds One and Two

Cuevas alleges that Attorney Rodriguez was ineffective by "conning" Cuevas into "unknowingly and involuntarily" entering his guilty plea and "waiving all his appellate rights . . . ." (Doc. cv-23 at 5; cv-24 at 1).  Cuevas claims that Rodriguez failed to advise him that his written plea agreement contained an appeal waiver; erroneously told Cuevas he would be held accountable for a "mere five kilograms" of cocaine; failed to explain the stipulated facts in the plea agreement that impacted Cuevas' role in the conspiracy; and promised Cuevas a sentence of not more than ten years and no enhancement. (Doc. cv-24 at 3-4, 8-13; cv-23 at 5-6, Attachment at 1-7.)  These claims are negated by Cuevas' sworn testimony.

On December 11, 2003, Cuevas entered his change of plea before the United States Magistrate Judge. (Doc. cr-389).  An interpreter was present and was utilized for this proceeding. (Doc. cr-557 at 2). Rodriguez advised the Magistrate Judge that he had "gone over the whole second superseding indictment" with Cuevas in Spanish. (Doc. cr-557  at 4-5).  After the Magistrate Judge read aloud the pertinent parts of Counts One and Two of the second superseding indictment, Cuevas pled guilty to both counts. (Doc. cr-557 at  5-

5

11).

Rodriguez advised the Magistrate Judge that he was fluent in Spanish and that he did not need an interpreter to converse with Cuevas. (Doc. cr-557 at 12). Rodriguez confirmed that he went over the charges and plea agreement with Cuevas. Rodriguez also advised the Magistrate Judge that he went through the discovery and "the diplomatic note that was written in Spanish," meeting four or five times at the jail with Cuevas to discuss the case. (Doc. cr-557 at 13).

Cuevas was then sworn. (Doc. cr-557 at 11).  The Magistrate Judge questioned Cuevas:

> THE COURT:        So, Mr. Cuevas, the question that I want to know is disregarding the first lawyer that you had, did you have any trouble understanding the Spanish that was being spoken to you by your lawyer, Mr. Rodriguez?
>
> THE DEFENDANT: No.
>
> THE COURT:        Are you having any trouble understanding the Spanish that is being spoken to you here today by the interpreter?
>
> THE DEFENDANT: No.

(Doc. cr-557 at 14).

Rodriguez stated that he did not have the second superseding indictment nor the plea agreement translated into written Spanish. (Doc. cr-557 at 15). The Magistrate Judge advised Cuevas that he could persist in his plea of not guilty and proceed to trial, to which Cuevas replied, "I am in total agreement. Today, guilty." (Doc. cr-557 at 17-18). Cuevas

6

advised the Magistrate Judge that he did not need more time to discuss the matter with Rodriguez and that he was satisfied with this lawyer. (Doc. cr-557 at 20- 21).

Cuevas acknowledged that Rodriguez explained the two charges contained in the second superseding indictment to him and that he understood the two charges, stating "I have read it [second superseding indictment] for over a year-and-a-half." (Doc. cr-557 at 22). The Magistrate Judge then elicited testimony which revealed that a written Spanish translation of the second superseding indictment was part of the diplomatic note Rodriguez discussed with Cuevas and part of a package of documents provided to Cuevas before the plea. (Doc. cr-557 at 22-23). Rodriguez again confirmed that no written Spanish translation of the plea agreement was prepared but advised that he discussed the plea agreement with Cuevas "page by page." (Doc. cr-557 at 23). This representation was confirmed by Cuevas, who stated, "Yes. He read it all to me." (Doc. cr-557 at 25).

The Magistrate Judge defined a conspiracy and discussed Counts One and Two as alleged in the second superseding indictment. (Doc. cr-557 at 25-26). Cuevas stated that he understood the charges, acknowledging that he faced increased maximum penalties because the two offenses involved five kilograms or more of cocaine. (Doc. cr-557 at 26-27). At the request of the Magistrate Judge, the interpreter read to Cuevas the factual basis[1] in the written plea agreement at paragraph 9. (Doc. cr-557 at 27). Cuevas stated that

---

[1]  The factual basis of the written plea agreement stated:
    From approximately 1991 until December 2001, the defendant worked for Pedro Navarrete and others as a trusted member of a multi-ton maritime cocaine smuggling organization operating in the Colombian cities of Cali, Medellin, Buenaventura and Tumaco. The defendant participated in the conspiracy as an organizer and administrator for the cocaine smuggling activities by outfitting smuggling vessels, hiring and paying crews, preparing necessary documentation for the smuggling ventures in preparation for the delivery of the cocaine to Mexico for ultimate distribution in the United States.

(continued...)

he did not dispute or disagree with the stipulated facts. Furthermore, Cuevas confirmed that he worked for Pedro Navarette and Jose Castrillon from 1991 until December 2000 "in connection with" smuggling cocaine into the United States; that he assisted the organization by outfitting vessels to smuggle cocaine; hired and paid crews to smuggle cocaine; and prepared some of the documentation necessary to smuggle cocaine. (Doc. cr-557 at 27-28).

Cuevas acknowledged that he understood he faced a minimum sentence of ten years and up to a maximum sentence of life in prison. (Doc. cr-557 at 28-29). After discussing a potential fine, a supervised release term, restitution, forfeiture and deportation, (Doc. cr-557 at 29-32), the Magistrate Judge advised Cuevas that his sentence would fall under the federal sentencing guidelines. (Doc. cr-557 at 32). Cuevas stated that he had seen the guidelines chart, including a Spanish language translation of the guidelines. (Doc. cr-557 at 32-33). The Magistrate Judge advised Cuevas that any guideline range suggested by his "lawyer or a cell mate" was only an estimate. (Doc. cr-557 at 33-34).

The Magistrate Judge discussed concessions made by the Government, including the downward adjustment for acceptance of responsibility (Doc. cr-557 at 35-37) and the recommendation for a sentence at the low end of the guideline range, (Doc. cr-557 at 37). The Magistrate Judge also discussed and explained the concept of cooperation and substantial assistance. (Doc. cr-557 at 38-40). The Magistrate Judge emphasized to Cuevas "that the Court is not a party to this plea agreement and, therefore, isn't bound by

---

[1](...continued)
        The defendant acknowledges that the conspiracies with which he is charged and to which he is pleading guilty each involve more than five kilograms of cocaine.

(Doc. cr-380 at 14).

the plea agreement." (Doc. cr-557 at 41). Cuevas acknowledged that he understood. (Doc. cr-557 at 42).

The Magistrate Judge discussed the appeal waiver, advising Cuevas that he could appeal his sentence only if there were an upward departure by the judge; a sentence above the statutory maximum; or a sentence that violated the law apart from the sentencing guidelines. (Doc. cr-557 at 42-43). Cuevas confirmed he understood the appeal waiver. (Doc. cr-557 at 43). The Magistrate Judge also stated, "And, furthermore, you cannot come back to this court at some later time and complain about the calculations either." (Doc. cr-557 at 43). Cuevas acknowledged that he understood that provision. (Doc. cr-557 at 43).

Cuevas acknowledged that his guilty plea was freely and voluntarily entered, without force or coercion and that no promises had been made to him other than those in the written plea agreement. (Doc. cr-557 at 44-45). Rodriguez confirmed that he explained the charges to Cuevas; that Cuevas understood the charges; that Rodriguez had a full opportunity to investigate the law and the facts; and that Cuevas understood the consequences of his guilty plea. (Doc. cr-557 at 45-46). After Cuevas confirmed that he "still" wished to plead guilty to the two charges, the Magistrate Judge stated that he would recommend that Cuevas' guilty plea be accepted. (Doc. cr-557 at 47).

Cuevas now alleges that Rodriguez erroneously told him that Cuevas would be held accountable for only five kilograms of cocaine and promised Cuevas a sentence of not more than ten years (with an offense level of 32 and guideline range of 87-107 months). Even if these claims were true, Cuevas is not entitled to relief on his ineffective assistance of counsel claim because Cuevas cannot establish he was prejudiced by Rodriguez's alleged ineffective performance.

The second superseding indictment alleged various cocaine importations involved in the conspiracies, specifically identifying drug quantity.[2]  At the change of plea hearing, Cuevas acknowledged that he had read a Spanish translation of the second superseding indictment which specifically alleged the drug quantities. (Doc. cr-557 at  2) . As stated above, Cuevas also confirmed at the change of plea hearing that he understood he faced increased maximum penalties because the two conspiracies involved five kilograms or more of cocaine (Doc. cr-557 at 27); that he faced a minimum sentence of ten years and up to a maximum sentence of life in prison (Doc. cr-557 at 27-28); that his sentence would fall under the federal sentencing guidelines and that any guideline range suggested by his "lawyer or a cell mate" was only an estimate (Doc. cr-557 at 32-33). Cuevas also acknowledged that he understood that the Court was not a party to the plea agreement. Contrary to his claim in the motion to vacate, Cuevas also advised the Magistrate Judge that he was not promised anything other than what was written in the plea agreement. (Doc. cr-557 at 37, 44-45).

Cuevas' claim that his counsel failed to explain the stipulated facts in the written plea agreement is negated by the change of plea hearing. At the change of plea hearing, Cuevas confirmed that he went over the plea agreement in Spanish with Rodriguez. (Doc. cr-557 at 23-25). Likewise, after the interpreter read the stipulated facts to Cuevas at the change of plea hearing, Cuevas answered, "No, it's fine," when the Magistrate Judge asked

---

[2]  The second superseding indictment alleged several predicate acts involving a vessel partially owned by Cuevas, F/V Salaqui, and its involvement in the importation of over 4,000 kilograms of cocaine (Doc. cr-198 PA# 29, 30, 41 and 42). At sentencing, discussion occurred about the numerous vessels involved in the conspiracies and Cuevas' role in getting those vessels ready for sea. After Cuevas challenged whether he owned the Salaqui (or any vessels) after 1993, the Government advised the Court that as late as September 1998, Cuevas received bonuses for utilization of the Salaqui. (Doc. cr-499 at 25).

him "Is there anything about that statement that you dispute or disagree with?" (Doc. cr-557 at 27).

Cuevas was advised of his appeal waiver not only by Rodriguez when he read Cuevas the plea agreement in Spanish (Doc. cr-557 at 23-25), but also by the Magistrate Judge.  At the change of plea hearing, the Magistrate Judge asked Cuevas if he agreed to the appeal waiver provision in the plea agreement "freely and voluntarily," and Cuevas answered, "Yes."  (Doc. cr-557 at 43). For Cuevas to claim now that he never heard the words "appellate or appeal waiver" until the change of plea hearing is not credible.

Also not credible is Cuevas' claim that when he did finally hear the phrase "appellate waiver" at the change of plea hearing, he mistakenly believed he had the right to challenge his sentence based on the Magistrate Judge's alleged inadequate explanation of the appeal waiver and sentence enhancement. Cuevas claims he was sentenced pursuant to an upward <u>departure</u>.  However, the enhancement Cuevas claims to be a departure is really the three-level upward <u>adjustment</u> he received for his role in the offense pursuant to USSG §3B1.1.[3] This adjustment, contrary to Cuevas' claim, was not an upward departure, and does not entitle him to attack his sentence based on a departure from the sentencing guidelines.[4]

Cuevas has not shown that Attorney Rodriguez was ineffective under either prong of the <u>Strickland</u> standard.  The transcript of the change of plea hearing demonstrates that

_____

[3] At the change of plea hearing, Cuevas agreed that the factual basis of his plea described his role in the offense.  (Doc. cr-557 at 27-28).

[4] The Eleventh Circuit has noted "[a]djustments and departures are 'distinctly different concepts under the Guidelines. Adjustments are changes to an offense level within the Guidelines. Departures, on the other hand, are sentences imposed outside the Guidelines.'" <u>United States v. Amedeo</u>, 370 F.3d 1305, 1312 n.5 (11th Cir. 2004)(quoting <u>United States v. Joetzki</u>, 952 F.2d 1090, 1097 (9th Cir. 1991)).

Cuevas' plea was knowing and voluntary and that he understood the appeal waiver in the plea agreement.

Grounds one and two do not warrant relief.

Ground Three

Cuevas contends that Attorney Kalisch was ineffective before and during sentencing. Cuevas complains that Kalisch failed to review the PSR with him; failed to file timely objections to the PSR; failed to conduct any investigation or call witnesses on Cuevas' behalf at sentencing; failed to review the plea agreement prior to sentencing; and failed to move to withdraw Cuevas' guilty plea prior to sentencing. These allegations stem from Cuevas' dissatisfaction with his sentence and this Court's determination that Cuevas was a manager/supervisor pursuant to USSG § 3B1.1.  These claims have no merit because Cuevas waived the right to appeal his sentence, directly or collaterally, on the claims he raises in ground three.

The right to appeal is statutory and can be knowingly and voluntarily waived.  See Williams v. United States, 396 F.3d 1340, 1342 (11th Cir.), cert. denied, 126 S.Ct. 246 (2005); United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993).  For this court to enforce an appeal waiver in a plea agreement, the Government must demonstrate either that the Magistrate Judge specifically questioned Cuevas concerning his understanding of the  sentence appeal waiver during the Fed. R. Crim. P. 11 colloquy or that it is manifestly clear from the record that Cuevas otherwise understood the full significance of the waiver. Williams, 396 F.3d at 1342; Bushert, 997 F.2d at 1351.

A Defendant's waiver of the right to appeal "directly or collaterally" encompasses his right to challenge his sentence in a section 2255 proceeding. See Williams, 396 F.3d at

12

1342; United States v. White, 307 F.3d 336, 341-44 (5th Cir. 2002); Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir. 2001); Davilla v. United States, 258 F.3d 448, 451-52 (6th Cir. 2001); United States v. Cockerham, 237 F.3d 1179, 1183-87 (1th Cir. 2001); Mason v. United States, 211 F.3d 1065, 1069-70 (7th Cir. 2000).  The waiver is enforceable against claims of ineffective assistance of counsel at sentencing, because "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Williams, 396 F.3d at 1342; see also Cockerham, 237 F.3d at 1182 (appeal and collateral attack waiver provision in plea agreement waives the right to section 2255 petition based on ineffective assistance of counsel unless challenge concerns the validity of the plea or waiver); Mason, 211 F.3d at 1069 (same).

In particular, if the issue underlying the ineffective assistance of counsel claim was waived by a Defendant in his plea agreement, then the ineffective assistance claim also was waived.  See Williams, 396 F.3d at 1342 (acknowledging that exceptions in plea agreement to Defendant's waiver of appeal did not apply to the claims raised in the petition); United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998)(although "dressed up as a Sixth Amendment claim, Defendant is really challenging the correctness of his sentence under the guidelines and, therefore, is barred by the plain language of his plea agreement;  to allow his claim would be to "render" meaningless" such plea agreement waivers). But see, Lattimore v. United States, 185 Fed. Appx. 808, 2006 WL 1674144 (11th Cir. June 19, 2006) (Defendant must be informed in the change of plea colloquy related to the appeal waiver  that he is waiving his right to collaterally attack his sentence) (citing United States v. Buchanan, 131 F.3d 1005, 1008) (11th Cir. 1997) (the court must explain

to the defendant, with specificity, the nature and extent of the appeal waiver); <u>United States</u> <u>v. Attar</u>, 38 F.3d 727, 732-33 (4th Cir. 1994) (finding that review of complete denial of counsel at sentencing was not precluded by general sentence appeal waiver); <u>United</u> <u>States v. Abarca</u>, 985 F.2d 1012, 1014 (9th Cir. 1993) (stating in dicta that the defendant's waiver did not "categorically foreclose him from bringing any section 2255 proceeding, such as a claim of ineffective assistance of counsel or involuntariness of waiver").

At the change of plea hearing, the Magistrate Judge discussed the appeal waiver, advising Cuevas that he could appeal his sentence only "if there is an upward departure by the sentencing judge or a sentence above the statutory maximum or a sentence that violates the law apart from the sentencing guidelines. In particular, what you cannot appeal is the way the Court calculates the sentencing guidelines." (Doc. cr-557 at 42-43). Cuevas confirmed he understood the waiver. (Doc. cr-557 at 43).  The Magistrate Judge further advised, "And, furthermore, you cannot come back to this court at some later time and complain about the calculations either."  (Doc. cr-557 at 43) Cuevas again acknowledged that he understood that provision. (Doc. cr-557 at 43).

In this case, this Magistrate Judge specifically questioned Cuevas about his appeal waiver during the Fed. R. Crim. P. 11 colloquy, and it is clear from the record that Cuevas understood the full significance of the waiver.( Doc. cr-557 at 42-43). While Cuevas' claims at ground three are couched in terms of ineffective assistance of counsel, Cuevas has waived them because they address his sentence and the manner in which it was determined, not the validity of his plea or the waiver. <u>See Williams</u>, 396 F.3d at 1342; <u>Davila</u>, 258 F.3d at 451-52; <u>Mason</u>, 211 F.3d at 1068; <u>Djelevic</u>, 161 F.3d at 107.

The Eleventh Circuit Court of Appeals held that the Magistrate Judge adequately

14

and specifically questioned Cuevas during the plea colloquy about the appeal waiver and that Cuevas confirmed that he understood the waiver. (Doc cr-590 at 2). See United States v. Jordan, 429 F.3d 1032, 1035 & n.1 (11th Cir. 2005) ("The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case.").  If this Court granted Cuevas relief on his ground three claims, then the Government would be denied the benefit for which it bargained. See United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir. 1997); Antonio v. United States, 2006 WL 1232805 (M.D. Fla. May 8, 2006) ("Enforcing the appeal waiver is merely holding Petitioner to the bargain he made.").

Even if the claims in ground three were not waived, the claims would not entitle Cuevas to relief. Sentencing occurred on April 21, 2004. (Doc. cr-472; cr-499). The interpreter and Cuevas were sworn. (Doc. cr-499 at 4-5). Cuevas confirmed that Kalisch had reviewed the PSR with him. (Doc. cr-499 at 6).

The Court had previously denied Cuevas' second motion for a continuance of sentencing, and the Court noted that Cuevas filed objections to the PSR the morning of the sentencing challenging his role in the offense (See USSG §3B1.1). (Doc. cr-499  at 7). Because Kalisch did not have a copy of the written plea agreement at the sentencing hearing, the Court read aloud the stipulated factual basis from the plea agreement. (Doc. cr-499 at 9). Kalisch argued that although Cuevas signed the plea agreement, he would not have stipulated that he was an organizer in the offense. (Doc. cr-499 at 10-11). Kalisch advised the Court that he reviewed the affidavit of Special Agent Rod Huff and based his

objection to Cuevas' role in the offense on that affidavit.[5] (Doc. cr-499 at 13).

Kalisch argued that Cuevas was not an organizer/leader. (Doc. cr-499 at 11-16). The Court noted that Cuevas was being accessed a three-level upward adjustment for his "managerial role or a supervisory role, not as an organizer or leader." (Doc. cr-499 at 16). Kalisch argued that while Cuevas paid the boat crews, he denied hiring them; Cuevas prepared documents but denied being a maritime operations manager for Ricapesca; and Cuevas denied owning the vessel Salaqui after1993. (Doc. cr-499 at 19-22). Kalisch explained that Cuevas accepted responsibility for "having knowingly assisted members of this conspiracy to make these vessels seaworthy." (Doc. cr-499 at 22).

The Government argued that it had documentation indicating that Cuevas owned the Salaqui, which was used by the organization; that Cuevas received bonuses for the use of that vessel in September 1998; and that Cuevas owned the Salaqui until it was sunk in/after 2000. (Doc. cr-499 at 25-26). Furthermore, the Huff affidavit, a sworn document that was based on interviews of various individuals and the review of financial records and documents, stated that Cuevas hired and paid crew members for a number of vessels. (Doc. cr-499 at 27-28). The Government, reading from Huff's affidavit, described Cuevas' role:

> An individual, cooperating witness number two, advised that Cuevas had an operational role in the smuggling, uh, operations similar to his own or her own role. And that is, Cuevas maintained several vessels, including the fishing vessels Salaqui, and the fishing vessel Tundama, T-U-N-D-A-M-A, in a condition suitable for smuggling cocaine from Colombia to Mexico.
>
> In addition, Cuevas was responsible for hiring or contracting captains, navigators, machinists and crewmen for some of the smuggling operations,

---

[5] This affidavit became Government's Sentencing Exhibit 1. (Doc. cr-499 at 42, 57).

i.e., those which involved the vessels which Cuevas owned or administered.

He also was involved in other vessels, such as the Rebelde, the Lanny D (sic), which were seized in – in the course of this proactive phase of this operation.

(Doc. cr-499 at 29-30).

The Court summarized information in the PSR and the Huff affidavit, ultimately finding that the information/evidence supported a finding that Cuevas had a managerial role in the offense. (Doc. cr-499 at 40-45). The Court specifically noted that a three-level increase due to his role as a manager/supervisor was "appropriate in this case." (Doc. cr-499 at 44-45).

The Government advised the Court that it continued to recommend a sentence at the low end of the guidelines as contemplated by the plea agreement. (Doc. cr-499 at 45). The Court adopted the PSR recommendations, which included a three-level downward adjustment for acceptance of responsibility. (Doc. cr-499 at 47). After finding that Cuevas' total offense level was 38 with a guideline range of 235-293 months incarceration, the Court sentenced Cuevas to 252 months incarceration. (Doc. cr-499 at 47, 54). The Court then advised Cuevas:

To the extent permitted in your plea agreement, you have the right to appeal the sentence. You must file a notice of appeal within ten days if you appeal. And I said to the extent permitted by your plea agreement. You waived your right to appeal in the plea agreement unless I exceeded the guidelines, and I did not; or sentenced you above the statutory maximum, and I did not; or in some way sentenced you which was a violation of the law apart from the guidelines, or apart from the statutory maximum, I'm not aware that that has been done.

(Doc. cr-499 at 56).

Cuevas faced a statutory maximum sentence of life in prison as noted in his plea

agreement. Cuevas' PSR recommended a sentencing guideline range of 235 to 293 months imprisonment. The  252 months sentence was within the guideline range and did not exceed the statutory maximum.

Cuevas contends that Kalisch should have objected to the facts in paragraph 20 of the PSR, which, according to Cuevas, labeled him as a "trusted member of the cartel." (Doc. cv-24 at 16). This paragraph, however, does not label him as a "cartel" member but a trusted member of "the organization"; that is, the organization headed by co-defendant Navarrete. PSR ¶ 20.[6]  Indeed, the facts in PSR ¶ 20 are virtually identical to those in Cuevas' plea agreement.[7]  Previously, at the change of plea hearing, the Magistrate Judge asked the interpreter to read the factual basis of the plea to Cuevas. (Doc. cr-557 at 27). After the interpreter had done so, the Magistrate Judge asked Cuevas, "Is there anything about that statement that you dispute or disagree with?"  Cuevas answered, "No, it's fine."

---

[6] Paragraph 20 of the PSR reads:

> **Ruben Cuevas** was involved in this organization from at least 1991, through December 2001, and was a trusted member of the organization. After Navarrete assumed sole control and ownership of Invermarp and Ricapesca in May 1995, **Cuevas** became the maritime operations manager and administrator.  As such **Cuevas** was an organizer of the conspiracy in that he outfitted smuggling vessels, hired and paid crews of the smuggling vessels, and prepared necessary documentation for the smuggling ventures in preparation for the delivery of the cocaine to Mexico for ultimate distribution in the United States.  He provided documentation of expenses for each smuggling operation, which was used to determine the fee paid to Castrillon-Henao and Navarrete.  In early 1999, **Cuevas** contacted the listed owner of one of the fishing vessels which had been previously utilized by the organization for drug smuggling prior to Navarrete's **arrest. Cuevas** arranged a meeting between the owner and Navarrete, at which time Navarrete advised the owner of the vessel not to sell it.  **Ruben Cuevas** was also part owner of the F/V Salaqui which was used in the cocaine smuggling activities.

[7]   See footnote one for the Factual Basis in the plea agreement.

(Doc. cr-557 at 27).

Kalisch did argue that contrary to PSR ¶ 20, Cuevas did not own the Salaqui after 1993; was not responsible for hiring vessel crews; and was not the maritime operations manager for Invermarp or Ricapesca. (Doc. cr-499 at 17-24). Kalisch did address PSR ¶ 20 at the sentencing hearing.

Cuevas also claims Kalisch should have objected to PSR ¶¶ 26 (drug quantity), 33 (base offense level), 36 (adjustment for role) and 38 (adjusted offense level). A review of the record reveals that Kalisch did object to these "determinations" at the sentencing hearing. Kalisch challenged the PSR's role determination in an attempt to reduce Cuevas' total offense level from 38 to 33 and to permit the application of USSG § 5C1.2 (the safety valve). (Doc. cr-499 at 15, 17).   At sentencing, Kalisch argued strongly that the Court should reduce Cuevas' total offense level.

In several general statements regarding Kalisch's alleged lack of preparedness for the sentencing hearing, Cuevas contends that this lack of preparedness prejudiced him because his guideline sentencing range increased as a result of Kalisch's being unprepared. However, at sentencing, Kalisch argued strongly to the Court that Cuevas' guidelines sentencing range should be less than what was recommended in the PSR.

Cuevas also alleges that Kalisch should have moved to withdraw Cuevas' guilty plea as Cuevas requested.  (Doc. cv-24 at 19). Citing generally to the sentencing transcript, Cuevas suggests that Kalisch knew his guilty plea was not knowing and voluntary. Presumably, Cuevas is relying on Kalisch's representation to the Court that Cuevas would not have stipulated that he was an organizer in his plea agreement. (Doc. cr-499 at 10-11). However, at the change of plea hearing, Cuevas was repeatedly advised he could not

19

withdraw his guilty plea if he did not agree with his guidelines range and sentence. Cuevas'
role was clearly addressed in the factual basis portion of his written plea agreement and
thoroughly discussed at his change of plea hearing. Cuevas agreed with that factual basis.

At his change of plea hearing, Cuevas was advised several times that he could not
withdraw his guilty plea once it was entered. The Magistrate Judge advised Cuevas that
he had a right to persist with his not guilty plea and to proceed to trial and could even
change his mind during the proceeding, but that once the plea of guilty was accepted, he
would not have the right to freely change his mind and withdraw his guilty plea. (Doc. cr-
557 at 17-18). Cuevas confirmed that he understood. Later, Cuevas was specifically
advised by the Magistrate Judge that "if at the time of sentencing the sentencing guidelines
range and, therefore, your sentence turns out to be less favorable than you had hoped, you
would not have a right to withdraw your plea of guilty." (Doc. cr-557 at 34). Cuevas affirmed
he understood and did not have any questions. Kalisch was not ineffective because he did
not move to withdraw Cuevas' guilty plea just because Cuevas was not satisfied with his
sentence.

As discussed above, Cuevas' ground three claims of ineffective assistance of
counsel are waived by the appeal waiver in his plea agreement. Even if these claims were
not waived, Cuevas has failed to establish that Kalisch was ineffective under either prong
of Strickland and ground three does not merit relief.

Accordingly, the Court orders:

That Cuevas' motion to vacate (Doc. cv-23, cr-622) is denied, with prejudice.  The
Clerk is directed to enter judgment against Cuevas in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on November 27, 2006.

SUSAN C. BUCKLEW
United States District Judge

AUSA: Joseph K. Ruddy
Maria Elena Perez, Esq.